UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COVANTAGE CREDIT UNION,

        Plaintiff,

v.                                                                 Case No. 21-C-867

BLUE CROSS BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE COMPANY,

        Defendant.

---

## DECISION AND ORDER

---

        Plaintiff CoVantage Credit Union brought this action against Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company, asserting claims of trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and Wisconsin common law. This matter comes before the Court on Defendant's motion to dismiss this action for lack of personal jurisdiction.

## BACKGROUND

        Plaintiff is a Wisconsin corporation that has provided credit union services under the federally registered mark COVANTAGE since 2000. Plaintiff is the owner of U.S. Trademark Registration No. 2,976,076 for the mark COVANTAGE CREDIT UNION, used in connection with credit union services, as well as U.S. Trademark Registration No. 5,051,308 for the mark COVANTAGE CARES, used in connection with charitable fundraising services. Plaintiff asserts that the marks are well known in Wisconsin and Michigan. Defendant is a Michigan nonprofit mutual insurance company.

Plaintiff alleges that Defendant, with constructive and, upon information and belief, actual knowledge of Plaintiff's rights in the COVANTAGE marks, filed applications with the United States Patent and Trademark Office seeking registration on the Principal Register of the trademarks COVANTAGE HEALTH PARTNERS & DESIGN and COVANTAGE HEALTH PARTNERS. Compl. ¶ 26, Dkt. No. 1. These marks are to be used in connection with "holding company services, namely, business management and business administration services for others in the health and managed care insurance industries; providing financial records management for others in the health and managed care insurance industries" and "providing financial management services for others in the health and managed care insurance industries; providing investment capital funding for others in the health and managed care insurance industries." *Id.* The accused marks published for opposition on May 18, 2018, and Plaintiff filed a notice of opposition.

Plaintiff maintains that the accused marks are confusingly similar to Plaintiff's COVANTAGE marks and that Defendant's use of the accused marks has been without the permission, consent, or authority of Plaintiff. It asserts the following claims against Defendant: federal trademark infringement, federal unfair competition and false designation, unfair competition under Wisconsin law, trademark infringement under Wisconsin law, refusal of application serial number 88/677253, and refusal of application serial number 88/6677258.

On the merits, Defendant denies that it has infringed Plaintiff's mark or that there is any likelihood of confusion, given the different services the parties offer. But as noted above, Defendant's threshold argument is that the Court lacks personal jurisdiction over it.

## ANALYSIS

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. Though the plaintiff has the burden of proving personal jurisdiction, the

burden is not a heavy one. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799–800 (7th Cir. 2014). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Purdue*, 338 F.3d at 782. The court must draw all inferences from the record in the plaintiff's favor. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "When the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a *prima facie* showing of personal jurisdiction over the defendants to survive a motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

In this case, Plaintiff asserts claims under both federal law (the Lanham Act) and state law. Because the Lanham Act does not have a special rule for personal jurisdiction, the court looks to Wisconsin law for the governing rule. *See Advanced Tactical*, 751 F.3d at 800. Under Wisconsin law, a court must employ a two-step inquiry to determine whether personal jurisdiction may be exercised over a nonresident defendant. First, the court determines whether the defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If the statutory requirements are satisfied, the court considers whether the exercise of jurisdiction comports with the requirements of due process. *Id.* The plaintiff bears "the minimal burden of establishing a prima facie threshold showing" that the statutory and constitutional requirements are satisfied. *Id.*

3

(citation omitted). The Court begins its analysis by considering whether the constitutional requirements are satisfied.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The concept of minimum contacts protects a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The primary focus of the personal jurisdiction analysis "is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Fran. Cty.*, 137 S. Ct. 1773, 1797 (2017). Personal jurisdiction may either be general or specific, "depending on the extent of the defendant's contacts with the forum state." *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

The Court turns first to general jurisdiction. General jurisdiction is "all-purpose" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). As the Seventh Circuit observed in *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*: "In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction. Because general jurisdiction exists

4

even with respect to conduct entirely unrelated to the forum state, the Court has emphasized that it should not lightly be found." 783 F.3d 695, 697 (7th Cir. 2015).

In *Daimler*, the plaintiffs—22 residents of Argentina—filed suit in the Northern District of California against DaimlerChrysler Aktiengesellscaft, a German manufacturer of luxury vehicles, alleging that Daimler's Argentinian subsidiary collaborated with state security forces during Argentina's "Dirty War" to kill, torture, and kidnap the plaintiffs or persons related to them. 571 U.S. at 120–21. The plaintiffs argued that the court had personal jurisdiction over Daimler based on the California contacts of another Daimler subsidiary, Mercedes-Benz USA, LLC (MBUSA), which was incorporated in Delaware and had its principal place of business in New Jersey. *Id.* The Supreme Court found that the lower court erred in concluding that Daimler, with its subsidiary MBUSA's contacts attributed to it, was "at home" in California and thus "subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands." *Id.* at 142 (citation omitted). MBUSA maintained "multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine;" was the "largest supplier of luxury vehicles to the California market;" and had annual sales of Daimler vehicles in California that generated approximately $4.6 billion in revenues, or 2.4% of Daimler's total worldwide sales. *Id.* at 123–24. Daimler's own California contacts were "sporadic." *Id.* at 133. The Court held that those "slim contacts" hardly rendered Daimler at home in California. *Id.* at 136.

The Court explained that the general jurisdiction inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 138–39 (quoting *Goodyear*, 564 U.S. at

5

Case 1:21-cv-00867-WCG   Filed 10/27/21   Page 5 of 10   Document 40

919) (alterations in original). The Court identified two places where that condition is satisfied: the corporation's place of incorporation and its principal place of business. *Id.* at 137. It observed that restricting general jurisdiction in this way increased the predictability of personal jurisdiction by allowing defendant corporations "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" and affording "plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 139. While the Court indicated that, in an "exceptional" case, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," it found Daimler's activities in California "plainly" insufficient to reach that level. *Id.* at 139 n.19. The Court reasoned that, if it allowed California to exercise general jurisdiction over Daimler, "the same global reach would presumably be available in every other State in which MBUSA's sales are sizable." *Id.* at 139. It concluded that such an "exorbitant" exercise of all-purpose jurisdiction would offend due process. *Id.*

More recently, in *BNSF Railway Co. v. Tyrrell*, the Supreme Court reversed the Montana Supreme Court's holding that Montana courts have general jurisdiction over BNSF, which was incorporated in Delaware and had its principal place of business in Texas. 137 S. Ct. 1549, 1558–59 (2017). The Court held that Montana did not have general jurisdiction over BNSF because, even though the railway had more than 2,000 miles of track and over 2,000 employees in Montana, it was not essentially "at home" in the state. *Id.* at 1554, 1559. While BNSF's business in Montana subjected it to specific jurisdiction "on claims related to the business it does in Montana," the Court made clear that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in Montana." *Id.* at 1559.

6

With these considerations in mind, the Court concludes that it does not have general personal jurisdiction over Defendant. Defendant is not incorporated in Wisconsin, and it does not have its principal place of business here. Plaintiff maintains that Defendant's extension of its provider base across the Michigan-Wisconsin border subjects it to general jurisdiction in Wisconsin. Specifically, Plaintiff notes that Defendant has established a network of 252 in-network healthcare providers in Wisconsin, including approximately 160 providers with primary addresses in Wisconsin. The providers are located in counties on the Wisconsin-Michigan boarder and provide services to individuals with BCBS Michigan health care coverage who live in Michigan but near the Wisconsin border. Defendant also has relationships with over 62,000 insureds in Wisconsin and has averaged more than $90 million a year in payments for services performed for its insureds by Wisconsin health care providers over the last three years. Defendant maintains that less than 0.02% of its total contracted healthcare providers have primary addresses in Wisconsin, that it does not have a registered agent in Wisconsin, and that it does not have assets in Wisconsin.

Although Defendant conducts business in Wisconsin, its contacts are not extensive enough to say that the defendant corporation is "at home" in Wisconsin. If these contacts were sufficient to allow adjudication of this case in Wisconsin, "the same global reach would presumably be available in every other State in which [Defendant's] sales are sizable." *Daimler*, 571 U.S. at 139. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Defendant's contacts are not sufficient to establish that Defendant is "at home" in Wisconsin. Accordingly, the Court lacks general jurisdiction over Defendant.

7

Specific jurisdiction is proper only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). Specific jurisdiction is appropriate when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal quotation marks and citation omitted).

Plaintiff asserts that Defendant purposefully availed itself of the privilege of conducting business in Wisconsin because it has "established a durable, robust network of more than 250 Wisconsin healthcare providers, including nearly 160 providers who list Wisconsin as their primary address, and more than 62,000 Wisconsin insureds and it treats them the same, respectively, as Michigan healthcare providers and insureds." Pl.'s Resp. Br. at 25, Dkt. No. 29. To establish specific jurisdiction, however, "a defendant's general connections with the forum are not enough," as Defendant's non-suit-related contacts are not relevant to the specific jurisdiction analysis. *See Bristol-Myers*, 137 S. Ct. at 1781 (rejecting the "sliding scale approach" where "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims").

Plaintiff also argues that Defendant's Emergent business unit hosts a Wisconsin-accessible website that displays the infringing marks and dozens of individuals with Wisconsin IP addresses have visited the website's pages that display the marks. It contends that Emergent directs website

visitors who are interested in learning more about Covantage Health Partners to Defendant's Advantasure business unit, which is registered to do business in Wisconsin.

While agency relationships "may be relevant to the exercise of *specific* jurisdiction," *Daimler*, 571 U.S. at 135 n.13, the acts of Defendant's subsidiaries are insufficient to show specific jurisdiction. As the Seventh Circuit has recognized, a plaintiff cannot establish that specific jurisdiction exists "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (citations omitted). The fact that one of Defendant's subsidiaries maintains a generally available website that does not obviously target Wisconsin residents is an insufficient basis for specific jurisdiction over Defendant. In short, Plaintiff has not established that this Court has specific jurisdiction over Defendant.

Plaintiff filed a motion to compel Defendant to provide complete responses to Plaintiff's jurisdictional discovery requests. In particular, Plaintiff seeks discovery related to Defendant's reimbursement to healthcare providers throughout Wisconsin and to providers that do not have a Michigan provider identification number; the dollar value of reimbursements processed through Blue Cross Blue Shield Wisconsin; Defendant's awareness of Plaintiff's trademarks; Defendant's relationship with its subsidiaries; and Defendant's communications with Wisconsin entities. The Court has reviewed the motion and supporting materials and finds that the information requested would not alter the result of the Court's personal jurisdiction analysis. *See Andersen v. Sportmart, Inc.*, 179 F.R.D 236, 241 (N.D. Ind. 1998) ("[A] plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." (citation omitted)). Accordingly, Plaintiff's motion to compel is denied.

Lastly, Plaintiff has requested that, in the event this Court finds that it lacks personal jurisdiction over Defendant, the case should be transferred to the Eastern District of Michigan where Defendant's principal place of business is located. In cases in which personal jurisdiction over the defendant is lacking, the matter can be transferred pursuant to either 28 U.S.C. § 1404(a) or § 1406(a) in the interest of justice. *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). In *Cote*, the court upheld the district court's decision to dismiss the case instead of transferring it to a district where personal jurisdiction over the defendant existed, even though dismissal meant that the plaintiff's case was forever barred by the statute of limitations. Here, Plaintiff faces no such bar. The "penalty" for filing in the wrong district is simply payment of statutory costs and a second filing fee, a small price indeed. The Court concludes that transfer of the case under these circumstances would not be in the interest of justice. Plaintiff's request is therefore denied.

## CONCLUSION

For these reasons, the Court concludes that it lacks personal jurisdiction over Defendant. Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED**. Dismissal is without prejudice. Plaintiff's motion to compel (Dkt. No. 31) is **DENIED**, and Plaintiff's motion to restrict (Dkt. No. 28) is **GRANTED**. Plaintiff's motion for a preliminary injunction (Dkt. No. 8) is also **DENIED** without prejudice. The Clerk is directed to enter judgment dismissing Plaintiff's case without prejudice for lack of personal jurisdiction.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of October, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge